**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Jeffrey A. Lee |
| Debtor 2 (Spouse, if filing) | Karen A. Lee |
| United States Bankruptcy Court for the : Eastern District of | Pennsylvania (State) |
| Case number | 23-13459-mdc |

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

| | |
|---|---|
| **1. Who is the current creditor?** | NewRez LLC d/b/a Shellpoint Mortgage Servicing<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| **2. Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes   From whom? _____ |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| **NewRez LLC DBA Shellpoint Mortgage Servicing**<br>**Bankruptcy Department**<br>**PO Box 10826**<br>**Greenville, SC 29603-0826** | **NewRez LLC DBA Shellpoint Mortgage Servicing**<br>**Bankruptcy Department**<br>**PO Box 650840**<br>**Dallas, TX 75265-0840** |
| Contact phone   800-365-7107 | Contact phone   800-365-7107 |
| Contact email  mtgbk@newrez.com | Contact email  mtgbk@newrez.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
_____

| | | | |
|---|---|---|---|
| **4. Does this claim amend one already filed?** | ☒ No<br>☐ Yes | Claim number on court claims registry (if known) _____ | Filed on _____<br>MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes  Who made the earlier filing? | | |

| Debtor 1 | **Jeffrey A. Lee** | Case number | 23-13459-mdc |
|---|---|---|---|
| | First Name   Middle Name   Last Name | | |

---

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

---

**6. Do you have any number you use to identify the debtor?**

☐ No

☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  1042

---

**7. How much is the claim?**   $ 121,604.81

For leases state only the amount of default.

**Does this amount include interest or other charges?**

☐ No

☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Money Loaned

---

**9. Is all or part of the claim secured?**

☐ No

☒ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

Describe:   480 HARPER AVE, Morrisville, PA 19067-6606

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**   Recorded Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $ 121,604.81

**Amount of the claim that is unsecured:**   $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ 1,053.91

**Annual Interest Rate** (when case was filed) 2.7500%

☒ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

---

**11. Does this claim involve a right to setoff?**

☒ No

☐ Yes. Identify the property _____

---

| Debtor 1 | **Jeffrey A. Lee** | | Case number | 23-13459-mdc |
|---|---|---|---|---|
| | First Name    Middle Name    Last Name | | | |

| 12. **Is all or part of the claim Entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No<br>☐ Yes. *Check all that apply:*<br>  ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br><br>  ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).<br><br>  ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).<br><br>  ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).<br><br>  ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).<br><br>  ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.<br><br>  * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | Amount entitled to priority<br><br>$_____<br><br>$_____<br><br><br>$_____<br><br>$_____<br>$_____<br>$_____ |

| **Part 3** | **Sign Below** |
|---|---|

| The person completing this proof of claim **must sign and date it.** FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.** | *Check the appropriate box*<br>☐ I am the creditor.<br>☒ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct. |

Executed on date    01/18/2024
                                   MM/DD/YYYY

*/s/Toni  Townsend*
          Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Toni  Townsend |
| | First name  Middle name    Last name |
| Title | Authorized Agent |
| Company | McCalla Raymer Leibert Pierce, LLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 1544 Old Alabama Road |
| | Number Street |
| | Roswell                         GA              30076 |
| | City                              State          ZIP Code |
| Contact Phone | (312) 346-9088 X5174     Email    Toni.Townsend@mccalla.com |

# Mortgage Proof of Claim Attachment

(12/23)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 23-13459-mdc |
| Debtor 1: | Jeffrey A. Lee |
| Debtor 2: | Karen A. Lee |
| Last 4 digits to identify: | 1042 |
| Creditor: | NewRez LLC d/b/a Shellpoint Mortgage Servicing |
| Servicer: | NewRez LLC DBA Shellpoint Mortgage Servicing |
| Fixed accrual/daily simple interest/other: | Fixed |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | $121,312.47 |
| Interest due: | $396.83 |
| Fees, costs due: | $62.43 |
| Escrow deficiency for funds advanced: | $0.00 |
| Less total funds on hand: | - $166.92 |
| Total debt: | $121,604.81 |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal due: | $520.17* |
| Interest due: | * |
| Prepetition fees due: | $62.43 |
| Escrow deficiency for funds advanced: | $0.00 |
| Projected escrow shortage: | $471.31 |
| Less funds on hand: | $0.00 |
| Total prepetition arrearage: | $1,053.91 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | $520.17 |
| Monthly escrow: | $79.80 |
| Private mortgage insurance: | $0.00 |
| Total Monthly Payment: | $599.97 |

*This amount includes the total amount of the principal and interest components of the missed payments as of the petition filing.

NewRez LLC DBA Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this proof of claim for NewRez LLC d/b/a Shellpoint Mortgage Servicing. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of NewRez LLC d/b/a Shellpoint Mortgage Servicing.

Case 23-13459-mdc Claim 3-1 Filed 01/24/24 Desc Main Document Page 5 of 36
Case 23-13459-mdc Doc 36-11 Filed 01/24/24 Entered 01/24/24 15:19:73 Page Desc
Exhibit - Proof of Claim    Page 5 of 36

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
## PHILADELPHIA DIVISION

IN RE:                                      )
                                            )   CASE NO. 23-13459-mdc
Jeffrey A. Lee                              )   CHAPTER 13
Karen A. Lee                                )   JUDGE Magdeline D. Coleman
                                            )


### CERTIFICATE OF SERVICE

I, Toni  Townsend, of 1544 Old Alabama Road, Roswell, Georgia 30076, certify:

    That I am, and at all times hereinafter mentioned, was more than 18 years of age;

    That on the date below, I served a copy of the within PROOF OF CLAIM filed in this bankruptcy matter on the following parties at the addresses shown, by regular United States Mail, with proper postage affixed, unless another manner of service is expressly indicated:

Jeffrey A. Lee
480 Harper Avenue
Morrisville, PA 19067

Karen A. Lee
480 Harper Avenue
Morrisville, PA 19067

PAUL H. YOUNG, Esq.                 *(served via ECF notification)*
3554 Hulmeville Rd.
Bensalem, PA 19020

Kenneth E. West                     *(served via ECF notification)*
Office of the Chapter 13 Standing Trustee
1234 Market Street - Suite 1813
19107, PA 19107

THIS LAW FIRM IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY
INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on: __01/18/2024__    By: _/s/Toni  Townsend_
             (date)                Toni  Townsend
                                   Authorized Agent
                                   McCalla Raymer Leibert Pierce, LLC
                                   1544 Old Alabama Road,
                                   Roswell, Georgia 30076
                                   Phone:  (312) 346-9088 X5174
                                   Toni.Townsend@mccalla.com

THIS LAW FIRM IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY
INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**PART V Loan Payment History from 04/01/23 of Lee - Case # 23-13459**

| Date | Contractual payment amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin, int & esc past due balance | Amount to Principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal Balance | Accrued interest balance | Escrow balance | Fees/Charges balance | Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balances | | | | | | $0.00 | | | | | | $122,992.18 | | $845.43 | $0.00 | $0.00 |
| 04/01/23 | $589.43 | | | Payment Due | 4/1/2023 | $589.43 | | | | | | $122,992.18 | | $845.43 | $0.00 | $0.00 |
| 04/10/23 | | | -$957.32 | Hazard Disb | 4/1/2023 | $589.43 | | | -$957.32 | | | $122,992.18 | | -$111.89 | $0.00 | $0.00 |
| 04/10/23 | | | -$20.81 | Late Charge Assessed | 4/1/2023 | $589.43 | | | | -$20.81 | | $122,992.18 | | -$111.89 | $20.81 | $0.00 |
| 04/27/23 | | $589.43 | | Payment | 5/1/2023 | $0.00 | $238.31 | $281.86 | $69.26 | | | $122,753.87 | | -$42.63 | $20.81 | $0.00 |
| 04/28/23 | | $590.53 | | Payment | 6/1/2023 | -$590.53 | $238.86 | $281.31 | $70.36 | | | $122,515.01 | | $27.73 | $20.81 | $0.00 |
| 04/28/23 | | -$590.53 | | Payment Reversal | 5/1/2023 | $0.00 | -$238.86 | -$281.31 | -$70.36 | | | $122,753.87 | | -$42.63 | $20.81 | $0.00 |
| 05/01/23 | $590.53 | | | Payment Due | 5/1/2023 | $590.53 | | | | | | $122,753.87 | | -$42.63 | $20.81 | $0.00 |
| 05/17/23 | | | -$20.81 | Late Charge Assessed | 5/1/2023 | $590.53 | | | | -$20.81 | | $122,753.87 | | -$42.63 | $41.62 | $0.00 |
| 05/23/23 | | $590.53 | | Payment | 6/1/2023 | $0.00 | $238.86 | $281.31 | $70.36 | | | $122,515.01 | | $27.73 | $41.62 | $0.00 |
| 05/30/23 | | $590.53 | | Payment | 7/1/2023 | -$590.53 | $239.41 | $280.76 | $70.36 | | | $122,275.60 | | $98.09 | $41.62 | $0.00 |
| 06/01/23 | $590.53 | | | Payment Due | 7/1/2023 | $0.00 | | | | | | $122,275.60 | | $98.09 | $41.62 | $0.00 |
| 06/28/23 | | $590.53 | | Payment | 8/1/2023 | -$590.53 | $239.96 | $280.21 | $70.36 | | | $122,035.64 | | $168.45 | $41.62 | $0.00 |
| 07/01/23 | | | | Payment Due | 8/1/2023 | $0.00 | | | | | | $122,035.64 | | $168.45 | $41.62 | $0.00 |
| 08/01/23 | | | | Payment Due | 8/1/2023 | $590.53 | | | | | | $122,035.64 | | $168.45 | $41.62 | $0.00 |
| 08/04/23 | | $590.53 | | Payment | 9/1/2023 | $0.00 | $240.50 | $279.67 | $70.36 | | | $121,795.14 | | $238.81 | $41.62 | $0.00 |
| 09/01/23 | | | | Payment Due | 9/1/2023 | $991.48 | | | | | | $121,795.14 | | $238.81 | $41.62 | $0.00 |
| 09/12/23 | $991.48 | | | Payment | 10/1/2023 | $991.48 | $241.06 | $279.11 | $471.31 | | | $121,554.08 | | $710.12 | $41.62 | $0.00 |
| 10/01/23 | | | | Payment Due | 10/1/2023 | $991.48 | | | | | | $121,554.08 | | $710.12 | $41.62 | $0.00 |
| 10/17/23 | | | -$20.81 | Late Charge Assessed | 10/1/2023 | $991.48 | | | | -$20.81 | | $121,554.08 | | $710.12 | $62.43 | $0.00 |
| 10/17/23 | | $991.48 | | Payment | 11/1/2023 | $0.00 | $241.61 | $278.56 | $471.31 | | | $121,312.47 | | $1,181.43 | $62.43 | $0.00 |
| 11/01/23 | | | -$1,014.51 | Surplus Disbursement | 11/1/2023 | $0.00 | | | -$1,014.51 | | | $121,312.47 | | $166.92 | $62.43 | $0.00 |
| 11/01/23 | $991.48 | | | Payment Due | 11/1/2023 | $991.48 | | | | | | $121,312.47 | | $166.92 | $62.43 | $0.00 |
| 11/14/23 | | | | BK Filed | 11/1/2023 | $991.48 | | | | | | $121,312.47 | | $166.92 | $62.43 | $0.00 |

# newrez

Servicing
PO Box 10826
Greenville, SC  29603 0826
For Inquiries:  (866) 317-2347

| | |
|---|---|
| JEFFREY LEE | Analysis Date:      November 14, 2023 |
| KAREN LEE | Loan: ██████ |
| 480 HARPER AVE | |
| MORRISVILLE PA  19067 | Property Address: |
| | 480 HARPER AVE |
| | MORRISVILLE, PA  19067 |

### Annual Escrow Account Disclosure Statement - Account History

**THIS NOTICE IS BEING PROVIDED PURSUANT TO THE REAL ESTATE SETTLEMENT PROCEDURES ACT AND REGULATION X.  TO THE EXTENT THE LOAN DESCRIBED BELOW IS INCLUDED IN AN ACTIVE BANKRUPTCY CASE OR IS SUBJECT TO A BANKRUPTCY DISCHARGE, THIS NOTICE IS BEING PROVIDED FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT THE DEBT FROM YOU PERSONALLY**

The following is an overview of your escrow account with NewRez. It contains  the history of escrow payments made on your behalf in the prior year, and a snapshot of the anticipated disbursements for the coming year. Any potential adjustments due to increases or decreases with your escrow items may affect your monthly escrow payment. If your escrow payment increases, your monthly payment will also increase. If the escrow payment decreases, your mortgage payment will decrease.

| Payment Information | Contractual | Effective Dec 01, 2023 |
|---|---|---|
| P & I Pmt: | $520.17 | $520.17 |
| Escrow Pmt: | $0.00 | $79.80 |
| Other Funds Pmt: | $0.00 | $0.00 |
| Asst. Pmt (-): | $0.00 | $0.00 |
| Reserve Acct Pmt: | $0.00 | $0.00 |
| Total Payment: | $520.17 | $599.97 |

| Prior Esc Pmt | September 01, 2023 |
|---|---|
| P & I Pmt: | $520.17 |
| Escrow Pmt: | $471.31 |
| Other Funds Pmt: | $0.00 |
| Asst. Pmt (-): | $0.00 |
| Resrv Acct Pmt: | $0.00 |
| Total Payment: | $991.48 |

| Escrow Balance Calculation | |
|---|---|
| Due Date: | November 01, 2023 |
| Escrow Balance: | $166.92 |
| Anticipated Pmts to Escrow: | $0.00 |
| Anticipated Pmts from Escrow (-): | $0.00 |
| Anticipated Escrow Balance: | $166.92 |

| Shortage/Overage Information | Effective Dec 01, 2023 |
|---|---|
| Upcoming Total Annual Bills | $957.56 |
| Required Cushion | $159.59 |
| Required Starting Balance | $638.23 |
| Escrow Shortage | -$471.31 |
| Surplus | $0.00 |

**Cushion Calculation:** Because NewRez does not set your tax amounts or insurance premiums, your escrow balance contains a cushion of 159.59. A cushion is an additional amount of funds held in your escrow in order to prevent the balance from becoming overdrawn when an increase in the disbursement amount occurs. Your lowest monthly balance should not be below 159.59 or 1/6 of the anticipated payment from the account.

*** Since you are in an active bankruptcy, your new payment shown above is the post-petition payment amount.**

This is a statement of actual activity in your escrow account from Nov 2023 to Nov 2023.  Last year's anticipated activity (payments to and from your escrow account) is next to the actual activity.

| Date | Payments to Escrow | | Payments From Escrow | | Description | Escrow Balance | |
|---|---|---|---|---|---|---|---|
| | Anticipated | Actual | Anticipated | Actual | | Required | Actual |
| | | | | | Starting Balance | 638.23 | 166.92 |
| | | | | | Anticipated Transactions | 638.23 | 166.92 |
| Nov 2023 | | | P | | | | 166.92 |
| | $0.00 | $0.00 | $0.00 | $0.00 | | | |

**An asterisk (*) indicates a difference from a previous estimate either in the date or the amount.  If you want a further explanation, please call our toll-free number.**

**P - The letter (P) beside an amount indicates that the payment or disbursement has not yet occurred but is estimated to occur as shown.**

Case 23-13459-dmc Claim 6711 Filed 01/24/24 Desc Main Document Page 9 of 36
Case 23-13459-dmc Doc 6711 Filed 01/24/24 Desc Main Document Page 9 of 36
Exhibit - Proof of Claim    Page 9 of 36

NewRez
For Inquiries: (866) 317-2347

Analysis Date:                                          November 14, 2023

Loan: ███████

## Annual Escrow Account Disclosure Statement - Projections for Coming Year

**THIS NOTICE IS BEING PROVIDED PURSUANT TO THE REAL ESTATE SETTLEMENT PROCEDURES ACT AND REGULATION X.  TO THE EXTENT THE LOAN DESCRIBED BELOW IS INCLUDED IN AN ACTIVE BANKRUPTCY CASE OR IS SUBJECT TO A BANKRUPTCY DISCHARGE, THIS NOTICE IS BEING PROVIDED FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT THE DEBT FROM YOU PERSONALLY**

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made to and from your account.
Your unpaid pre-petition escrow Amount is $471.31. This amount has been removed from the projected starting balance.

Original Pre-Petition Amouont $471.31, Paid Pre-Petition Amount $0.00, Remaining Pre-Petition Amount $471.31.

| Date | Anticipated Payments | | | Escrow Balance | |
|------|--------|-----------|-------------|-------------|----------|
|      | To Escrow | From Escrow | Description | Anticipated | Required |
|      |         |          | Starting Balance | 166.92 | 638.23 |
| Dec 2023 | 79.80 | | | 246.72 | 718.03 |
| Jan 2024 | 79.80 | | | 326.52 | 797.83 |
| Feb 2024 | 79.80 | | | 406.32 | 877.63 |
| Mar 2024 | 79.80 | | | 486.12 | 957.43 |
| Apr 2024 | 79.80 | 0.12 | Borough Tax | 565.80 | 1,037.11 |
| May 2024 | 79.80 | 957.32 | Hazard | (311.72) | 159.59 |
| Jun 2024 | 79.80 | | | (231.92) | 239.39 |
| Jul 2024 | 79.80 | | | (152.12) | 319.19 |
| Aug 2024 | 79.80 | 0.12 | School Tax | (72.44) | 398.87 |
| Sep 2024 | 79.80 | | | 7.36 | 478.67 |
| Oct 2024 | 79.80 | | | 87.16 | 558.47 |
| Nov 2024 | 79.80 | | | 166.96 | 638.27 |
|          | $957.60 | $957.56 | | | |

**G – Pending Disbursements prior to the bankruptcy filing date.  Pre-petition disbursements.**

(Please keep this statement for comparison with the actual activity in your account at the end of the escrow accounting computation year.)

Your ending balance from the last month of the account history (escrow balance anticipated) is 166.92.  Your starting
balance (escrow balance required) according to this analysis should be $638.23.  This means you have a shortage of 471.31.
This shortage may be collected from you over a period of 12 months or more unless the shortage is less than 1 month's
deposit, in which case we have the additional option of requesting payment within 30 days.  We have decided to do nothing.
We anticipate the total of your coming year bills to be 957.56.  We divide that amount by the number of payments expected during the coming year to obtain your
escrow payment.

| New Escrow Payment Calculation | |
|-------------------------------|--------|
| Unadjusted Escrow Payment | $79.80 |
| Surplus Reduction: | $0.00 |
| Shortage Installment: | $0.00 |
| Rounding Adjustment Amount: | $0.00 |
| Escrow Payment: | $79.80 |

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the
status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have
received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States
Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your
bankruptcy.

**Notice of Error or Information Request Address**

You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to
request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or
Information Request, please write to us at the following address:

NewRez
PO Box 10826
Greenville, SC  29603 0826

## NOTE

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

| JULY 15, 2021 | MORRISVILLE | , | PENNSYLVANIA |
|---|---|---|---|
| [Date] | [City] | | [State] |

480 HARPER AVE, MORRISVILLE, PENNSYLVANIA 19067-6606
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$127,418.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **CALIBER HOME LOANS, INC.**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **2.750%.**

The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on **SEPTEMBER 1, 2021**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **AUGUST 1, 2051**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

I will make my monthly payments at **P.O. BOX 650856, DALLAS, TX 75265-0856** or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$520.17.**

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe

PENNSYLVANIA FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3239 2/16 *Page 1 of 3*

under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.00%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  ALLONGE TO THIS NOTE

If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.  [Check applicable box]

☐ Graduated Payment Allonge          ☐ Other [Specify]          ☐ Other [Specify]

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of this loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code. An authorized transfer ("assumption") of the property shall also be subject to the following additional covenants and agreements:

**PENNSYLVANIA FIXED RATE NOTE**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3239 2/16** *Page 2 of 3*

a) ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent (.50%) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 USC 3729 (c).

b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

c) INDEMNITY LIABILITY ASSUMPTION CLAUSE: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

## 12. NOTICE TO BORROWER

Regulations (38 C.F.R. Part 36) issued under the Department of Veteran's Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

## 13. EFFECT OF SURVIVAL EVENTS

For purposes of this Note, "Survival Event" is defined as follows:

(a) any default described in Section 6(B) of this Note;

(b) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(c) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(d) the Maturity Date as defined in this Note;

(e) the entry of any judgment against me under this Note; and

(f) the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Borrower - **JEFFREY LEE**

_____ (Seal)
Borrower - **KAREN LEE**

*[Sign Original Only]*

Loan Originator Organization: **CALIBER HOME LOANS, INC.**
NMLS ID:
Loan Originator: **FRANK IBARRA JR**
NMLS ID:

Pay to the order of

Without Recourse
Caliber Home Loans, Inc.

Harold Simmons
Post Closing Team Lead

**PENNSYLVANIA FIXED RATE NOTE**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3239 2/16** *Page 3 of 3*

Prepared By:
**CALIBER HOME LOANS, INC.**
**1525 S. BELT LINE ROAD**
**COPPELL, TX 75019**

After Recording Return To:
**FIRST AMERICAN MORTGAGE**
**SOLUTIONS ON BEHALF OF**
**CALIBER HOME LOANS**
**1795 INTERNATIONAL WAY**
**IDAHO FALLS, ID 83402**

──────────────── [Space Above This Line For Recording Data] ────────────────

# MORTGAGE

# NOTICE:  THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**    **"Security Instrument"** means this document, which is dated **JULY 15, 2021,** together with all Riders to this document.
**(B)**    **"Borrower"** is **JEFFREY LEE AND KAREN LEE, HUSBAND AND WIFE**. Borrower's address is **480 HARPER AVE, MORRISVILLE, PENNSYLVANIA 19067-6606**. Borrower is the mortgagor under this Security Instrument.
**(C)**    **"MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  **Form 3039**  1/01 (rev. 2/16)

of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

**(D)** **"Lender"** is **CALIBER HOME LOANS, INC.**. Lender is a **CORPORATION** organized and existing under the laws of **DELAWARE**. Lender's address is **1525 S. BELT LINE ROAD, COPPELL, TX 75019**.

**(E)** **"Note"** means the promissory note signed by Borrower and dated **JULY 15, 2021**. The Note states that Borrower owes Lender **ONE HUNDRED TWENTY-SEVEN THOUSAND FOUR HUNDRED EIGHTEEN AND 00/100THS** Dollars (U.S. **$127,418.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **AUGUST 01, 2051**.

**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Second Home Rider

☐ Balloon Rider   ☐ Planned Unit Development Rider   ☐ Biweekly Payment Rider

☐ 1-4 Family Rider   ☒ V.A. Rider   ☐ Manufactured Home Rider

☐ Leasehold Rider   ☐ Revocable Trust Rider

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a

"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)   "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the ____County____ [Type of Recording Jurisdiction] of ____BUCKS____ [Name of Recording Jurisdiction]:

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE PART HEREOF**

which currently has the address of **480 HARPER AVE**

|                          |               |            | [Street]               |
|--------------------------|---------------|------------|------------------------|
| **MORRISVILLE**          | , Pennsylvania| **19067-6606** | ("Property Address"): |
| [City]                   |               | [Zip Code] |                        |

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender

PENNSYLVANIA-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3039  1/01 (rev. 2/16)**
*(page 3 of 15 pages)*

may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

     **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

     If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

     Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

     **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency

Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay

to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

PENNSYLVANIA-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3039 1/01 (rev. 2/16)
*(page 8 of 15 pages)*

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those

beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to

PENNSYLVANIA-Single Family-Fannie Mac/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
*(page 11 of 15 pages)*

Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future

laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;

(h) permit the collection and application of the miscellaneous proceeds as required by Section 11 of this Security Instrument;

(i) pay the fees required by Section 14 of this Security Instrument;

(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k) pay any collection expenses under Section 22 of this Security Instrument; and

(l) pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument;

(d) the Maturity Date as defined in the Note;

(e) the entry of any judgment against Borrower under the Note; and

(f) the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

Witness -

_____

Witness -

_____ (Seal)
Borrower -  JEFFREY LEE

_____ (Seal)
Borrower -  **KAREN LEE**

State of **PENNSYLVANIA**
County of ~~NORTHUMBERLAND~~ Bucks (Ca)

On this, the ____15th____ day of ____July____, ___2021___, before me, the undersigned officer, personally appeared **JEFFREY LEE and KAREN LEE**, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seals.

Place Seal Below

_____
Notary Signature

```
Commonwealth of Pennsylvania - Notary Seal
CHRISTOPHER GEBHARD - Notary Public
            Bucks County
My Commission Expires Nov 20, 2024
    Commission Number 1273151
```

_____
Notary Printed Name

Title of Officer:  Notary Public

My Commission Expires: ___11/20/2024___

[ ] This notarial act involved the use of communication technology.

Loan Originator Organization: **CALIBER HOME LOANS, INC.**
NMLS ID: **15622**

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3039  1/01 (rev. 2/16)
*(page 14 of 15 pages)*

Loan Originator: **FRANK IBARRA JR**
NMLS II

CERTIFICATE OF RESIDENCE  I,  *Jill Campos*  do hereby certify that the correct address of the within-named lender is **1525 S. BELT LINE ROAD, COPPELL, TX  75019**, witness my hand this _____ 15 _____ day of _____ July _____, 2021.

Agent of Lender.

**PENNSYLVANIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3039  1/01 (rev. 2/16)**
*(page 15 of 15 pages)*

## V.A. ASSUMPTION POLICY RIDER

# NOTICE:  THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS ASSUMPTION POLICY RIDER is made this **15TH** day of **JULY, 2021**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt ("Instrument") of the same date herewith, given by the undersigned ("Mortgagor") to secure the Mortgagor's Note ("Note") of the same date to **CALIBER HOME LOANS, INC.** its successors and assigns ("Mortgagee") and covering the property described in the Instrument and located at:

**480 HARPER AVE, MORRISVILLE, PENNSYLVANIA 19067-6606**

[Property Address]

Notwithstanding anything to the contrary set forth in the Instrument, Mortgagee and Mortgagor hereby acknowledge and agree to the following:

ACCELERATION CLAUSE:  This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of this loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a)    ASSUMPTION FUNDING FEE:  A fee equal to one-half of 1 percent (.50%) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs.  If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable.  This fee is automatically waived if the assumer is exempt under the provisions of 38 USC 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE:  Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed.  The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c)    INDEMNITY LIABILITY ASSUMPTION CLAUSE:  If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

18430354 - 34000008
© 2021 Covius Services, LLC

*(page 1 of 2 pages)*

IN WITNESS WHEREOF, Mortgagor(s) has executed this Assumption Policy Rider.

_____ (Seal)
Borrower -    JEFFREY LEE

_____ (Seal)
Borrower -    KAREN LEE

*(page 2 of 2 pages)*

LOAN NO.: ███████████

Loan Name: **JEFFREY LEE AND KAREN LEE, HUSBAND AND WIFE**
Property Address: **480 HARPER AVE, MORRISVILLE, PENNSYLVANIA 19067-6606**

## EXHIBIT "A"
### LEGAL DESCRIPTION OF PROPERTY

**SEE EXHIBIT 'A' ATTACHED HERETO AND BY THIS REFERENCE INCORPORATED HEREIN**

**EXHIBIT 'A'**
**LEGAL DESCRIPTION**

All that certain real property situated in the County of Bucks, State of PA, described as follows:

THE FOLLOWING DESCRIBED REAL PROPERTY IN THE CITY OF MORRISVILLE, COUNTY OF BUCKS, STATE OF PA, DESCRIBED AS:

ALL THAT CERTAIN LOT OR LAND, TOGETHER WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, KNOWN AS 480 HARPER AVENUE, SITUATE LYING AND BEING IN THE BOROUGH OF MORRISVILLE, COUNTY OF BUCKS AND STATE OF PENNSYLVANIA, KNOWN AS LOT NO. 231 ON THE "CAPITOL VIEW PLAN OF LOTS" AS LAID OUT BY THOMAS B. STOCKHAM, C.E., IN THE SAID BOROUGH AND RECORDED AS AFORESAID IN PLAN BOOK NO. 1 PAGE 4, BOUNDED AND DESCRIBED AS FOLLOWS, TO WIT:

BEGINNING AT A POINT IN THE EASTERLY SIDE OF HARPER AVENUE A DISTANCE OF NINETY-FIVE FEET MORE OR LESS FROM A CORNER OF SAID HARPER AVENUE AND WEST HENDRICKSON AVENUE; AND RUNNING THENCE AT RIGHT ANGLES TO THE SAID HARPER AVENUE, (1) IN AN EASTERLY DIRECTION ONE HUNDRED FIFTY FEET MORE OR LESS ALONG LOT NO. 232, TO A CORNER; THENCE (2) ALONG THE REAR LINE OF LOT NO. 207, IN THE SOUTHERLY DIRECTION AT RIGHT ANGLES TO THE LAST MENTIONED LINE A DISTANCE OF FORTY-FIVE TO A CORNER; THENCE (3) IN A WESTERLY DIRECTION ALONG LOT NO. 230 PARALLELING THE FIRST MENTIONED COURSE A DISTANCE OF ONE HUNDRED FIFTY FEET TO THE EASTERLY SIDE OF SAID HARPER AVENUE; THENCE (4) IN A NORTHERLY DIRECTION AT RIGHT ANGLES TO THE LAST MENTIONED COURSE ALONG THE SAID HARPER AVENUE A DISTANCE OF FORTY-FIVE FEET TO THE PLACE OF BEGINNING.

ALSO ALL THAT CERTAIN LOT OF LAND, TOGETHER WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE LYING AND BEING IN THE BOROUGH OF MORRISVILLE, IN THE COUNTY OF BUCKS AND STATE OF PENNSYLVANIA, BEING ONE HALF OF LOT NO. 232 ON A CAPITOL VIEW PLAN OF LOTS LAID OUT BY THOMAS D. STOCKHAM, C.E. IN SAID BOROUGH AND RECORDED IN THE OFFICE OF THE RECORDING OF DEEDS, ETC., IN AND FOR THE COUNTY OF BUCKS, AT DOYLESTOWN, PENNSYLVANIA, IN PLAN BOOK 1 PAGE 4, BOUNDED AND DESCRIBED AS FOLLOWS, TO WIT:

BEGINNING AT A POINT OF THE EASTERLY SIDE OF HARPER AVENUE SEVENTY-TWO AND FIVE TENTHS FEET FROM THE SOUTHEAST CORNER OF THE SAID HARPER AVENUE AND WEST HENDRICKSON AVENUE, AND RUNNING THENCE (1) IN AN EASTERLY DIRECTION AT RIGHT ANGLES TO SAID HARPER AVENUE, THROUGH THE CENTER OF SAID LOT NO. 232 AND ALONG LAND THIS DAY CONVEYED TO WALTER S. AND BEATRICE E. BARBER, A DISTANCE OF ONE HUNDRED FIFTY FEET TO A CORNER; THENCE (2) IN A SOUTHERLY DIRECTION ALONG OTHER LAND OF THE PARTIES OF THE FIRST PART, A DISTANCE OF TWENTY-TWO AND FIVE TENTHS FEET TO A CORNER; THENCE (3) IN A WESTERLY DIRECTION ALONG OTHER LANDS OF THE SAID PARTIES OF THE SECOND PART, PARALLELING FIRST MENTIONED COURSE, A DISTANCE OF ONE HUNDRED FIFTY FEET TO THE SAID HARPER AVENUE; THENCE (4) IN A NORTHERLY DIRECTION ALONG THE SAID HARPER AVENUE A DISTANCE OF TWENTY-TWO AND FIVE TENTHS FEET TO THE PLACE OF BEGINNING.

Assessor Parcel Number(s) ███

## BUCKS COUNTY RECORDER OF DEEDS
### 55 East Court Street
### Doylestown, Pennsylvania 18901

Instrument Number ██████████
Recorded On 9/27/2021 At 11:46:08 AM                    * Total Pages - 19
* Instrument Type - MORTGAGE - CORPORATIONS
  Invoice Number - ██████████          User - KGB
* Mortgagor - LEE, JEFFREY
* Mortgagee - CALIBER HOME LOANS INC
* Customer - SIMPLIFILE LC E-RECORDING
* FEES
  RECORDING FEES              $137.75
  TOTAL PAID                  $137.75

```
Bucks County UPI Certification
On September 27, 2021 By TF
```

```
This is a certification page

DO NOT DETACH

This page is now part
of this legal document.
```

RETURN DOCUMENT TO:
RADIAN SETTLEMENT SERVICES INC.
1000 GSK DR STE 210
CORAOPOLIS, PA 15108-1310

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Robin M. Robinson
Recorder of Deeds

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
          ▇▇▇▇▇        -        MORRISVILLE BOR
          CERTIFIED 09/27/2021 BY TF
```

Prepared By:
**CALIBER HOME LOANS, INC.**
**1525 S. BELT LINE ROAD**
**COPPELL, TX 75019**

After Recording Return To:
**FIRST AMERICAN MORTGAGE**
**SOLUTIONS ON BEHALF OF**
**CALIBER HOME LOANS**
**1795 INTERNATIONAL WAY**
**IDAHO FALLS, ID 83402**

UPI Number: ▇▇▇▇▇▇▇

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated **JULY 15, 2021**, together with all Riders to this document.
**(B)** **"Borrower"** is **JEFFREY LEE AND KAREN LEE, HUSBAND AND WIFE**. Borrower's address is **480 HARPER AVE, MORRISVILLE, PENNSYLVANIA 19067-6606**. Borrower is the mortgagor under this Security Instrument.
**(C)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3039  1/01 (rev. 2/16)
(page 1 of 15 pages)

**BUCKS COUNTY RECORDER OF DEEDS**
55 East Court Street
Doylestown, Pennsylvania  18901
(215) 348-6209

Instrument Number - ███████████

Recorded On 11/29/2023 At 3:45:48 PM             * Total Pages - 3

\* Instrument Type - MORTGAGE ASSIGNMENT

Invoice Number - █████████        User -  KLJ

\* Mortgagor - CALIBER HOME LOANS INC

\* Mortgagee - NEWREZ LLC

\* Customer - SIMPLIFILE LC E-RECORDING

\* <u>FEES</u>

| | |
|---|---|
| RECORDING FEES | $72.75 |
| TOTAL PAID | $72.75 |

Bucks County UPI Certification
On November 29, 2023 By LMC

This is a certification page

# DO NOT DETACH

This page is now part
of this legal document.

<u>RETURN DOCUMENT TO:</u>
NATIONWIDE TITLE CLEARING, LLC
2100 ALT 19
PALM HARBOR, FL 34683-2620

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.

Daniel J. McPhillips
Recorder of Deeds

\* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
████████        -        MORRISVILLE BOR
       CERTIFIED 11/29/2023 BY LMC
```

**Prepared By:**
**Jennifer Zak/NTC, 2100 Alt. 19**
**North, Palm Harbor, FL 34683**
**(800)346-9152**

When Recorded Return To:
Shellpoint Mortgage Servicing
C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

**Loan Number** ████████

Parcel ID Number ████████

## ASSIGNMENT OF MORTGAGE

**SEND ALL OTHER BORROWER OR LOAN RELATED CORRESPONDENCE TO: Shellpoint Mortgage Servicing, P.O. Box 10826, Greenville, SC 29603-0826, Toll-free Phone: (800) 365-7107**

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR CALIBER HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all liens, and any rights due or to become due thereon to **NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, WHOSE ADDRESS IS 1100 VIRGINIA DR STE 125, FORT WASHINGTON, PA 19034, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 07/15/2021, in the amount of $127,418.00 made by **JEFFREY LEE AND KAREN LEE** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR CALIBER HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS** recorded on 09/27/2021, in the Office of the Recorder of Deeds of **BUCKS** County, in the State of **Pennsylvania**, in **Instrument # 2021089151**.
Property is more commonly known as: 480 HARPER AVE, MORRISVILLE, PA 19067.

**Dated this 29th day of November in the year 2023**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR CALIBER HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS**

By: _____

**SUSAN HICKS**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

████████ MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)
PRE-REFERRAL   N1 MIN ████████ MERS PHONE 1-888-679-6377 MERS Mailing Addresses:
11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026 ████
[C-2] EFRMPA]

**Loan Number**

STATE OF FLORIDA    COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 29th day of November in the year 2023, by Susan Hicks as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS MORTGAGEE, AS NOMINEE FOR CALIBER HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**VICKY MCCOY**
**COMM EXPIRES: 12/18/2026**



VICKY MCCOY
Notary Public - State of Florida
Commission # HH 328470
My Comm. Expires Dec 18, 2026
Bonded through National Notary Assn.

Assignment of Mortgage from:
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS MORTGAGEE, AS NOMINEE FOR CALIBER HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026)**
to:
**NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, WHOSE ADDRESS IS 1100 VIRGINIA DR STE 125, FORT WASHINGTON, PA 19034, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **JEFFREY LEE AND KAREN LEE**

All that certain lot or piece of ground situated in
Mortgage Premises: 480 HARPER AVE
　　　　　　　　　　　MORRISVILLE, PA 19067
　　　　　　　　　　　BUCKS
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

### Certificate of Residence

I, **Susan Hicks**, do certify that the precise address of the within named Assignee is:
**NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, WHOSE ADDRESS IS 1100 VIRGINIA DR STE 125, FORT WASHINGTON, PA 19034, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

**SUSAN HICKS**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

SPTDA 43971478 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) PRE-REFERRAL   N1 MIN MERS PHONE 1-888-679-6377 MERS Mailing Addresses: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026
[C-2]   EFRMPA1